**William R. MALECHA, Appellant,**

**v.**

**ST. CROIX VALLEY SKYDIVING CLUB, INC., Respondent,**

**Lite Flight, Inc., Defendant.**

**No. C7–86–378.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Oct. 29, 1986.

---

James J. Boyd, Paige J. Donnelly, Ltd., St. Paul, for appellant.

Mary H. Terzino, Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant William "Rick" Malecha brought this action against respondent St. Croix Valley Skydiving Club, Inc. (the Skydiving Club) and Lite Flight, Inc. seeking to recover damages for the injuries he incurred in a skydiving accident. The trial court granted the Skydiving Club summary judgment on the basis of a waiver of liability form that appellant signed. Lite Flight was subsequently dismissed pursuant to the parties' stipulation. On appeal, appellant challenges the validity of the exculpatory agreement. We affirm.

## FACTS

On August 27, 1983, Malecha and two friends took a skydiving course at the Skydiving Club, a corporation that operates a recreational parachuting center, near Osceola, Wisconsin. The course included approximately five hours of instruction and the opportunity to make a parachute jump. During Malecha's jump, late in the afternoon, Malecha was injured when his parachute did not open properly. His injuries included a fracture of the right foot, a fracture in the lumbar spine area, fractures of some teeth and some lacerations on his chin and neck.

The issue on appeal deals with the validity of the waiver of liability form that Malecha signed.

Malecha paid the Skydiving Club for the course after he arrived on the morning of August 27. At some point during the day, he signed a waiver of liability form that an instructor gave him. Malecha claims that he did not sign the form until later in the day right before his jump. One witness, an instructor, also signed the waiver. The waiver provided, in regular type, as follows:

Know all men by these presents:

That I, [Rick Malecha], the undersigned, while engaging in the sport of parachuting or skydiving, do hereby agree for myself, my heirs, executors, administrators and assigns, that neither said St. Croix Valley Skydiving Club Inc., nor any of its officers or members shall be held responsible or liable for any negligence implied or otherwise, or personal injury, or death, or property loss, or damage suffered or sustained by me in connection with or arising out of or resulting from any or all parachuting or skydiving activities engaged in by me; and further, I do hereby, for myself, my heirs, administrators, executors, and assigns, assume all risk whatsoever of personal injury or death or property damage or loss in connection with or arising out of or resulting from any or all parachuting or skydiving activities engaged in by me, and absolve and release said St. Croix Valley Skydiving Club, Inc., its officers and members, of and from all liability thereof, and further, I do hereby convent [sic] and agree for myself, my heirs, executors, administrators, and assigns, not to sue, arrest, attach, or prosecute said St. Croix Valley Skydiving Club, Inc., its officers and members for or on account of any such personal injury or death or property damage or loss, it being my express intent and purpose to bind myself, my heirs, executors, administrators, and assigns hereby.

The words "PERMANENT WAIVER" appear in capital letters at the bottom of the printed page following the signature lines.

Malecha claims that he was not informed of the effect of the document before signing it. He does not recall whether he was instructed to read the document before signing it. In any event, he did not thoroughly read the waiver and he claims he did not understand its terms prior to signing it. After reading the form during his

deposition, Malecha interpreted the form to be a waiver of "the right to hold [the Skydiving Club] responsible or liable for negligence."

Alan Eisentrager, one of the friends with Malecha at the Skydiving Club, states in his deposition that they paid for the course just before the training started in the morning. He remembers receiving a copy of the waiver and being told that if he wanted to jump he had to sign the form. Peter Eisentrager, another friend with Malecha the day of the accident, stated in his deposition that he paid for the course before it started. He recalled being given "something" at the time that he paid for the course.

Following the accident, Malecha brought this action against the Skydiving Club based upon the theory that the Skydiving Club negligently failed to provide safe equipment and adequate training and supervision. The trial court granted summary judgment in favor of the Skydiving Club on the basis that Malecha released the Skydiving Club from liability for its negligence.

After the parties stipulated to the dismissal of Lite Flight, Inc., Malecha filed this appeal.

## ISSUE

Did the trial court err in granting summary judgment based on the exculpatory agreement?

## ANALYSIS

On review of a summary judgment award, this court must determine whether there are any genuine issues of material fact for trial and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

■ Malecha claims that the exculpatory agreement is ambiguous and, therefore, a factual issue exists with respect to the meaning of the agreement. Whether a contract provision is ambiguous is a question of law in the first instance. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn. 1982). The trial court found the agreement to be unambiguous. We agree. Even though the agreement is unnecessarily wordy, it is susceptible to only one reasonable interpretation. *See Collins Truck Lines, Inc. v. Metropolitan Waste Control Commission,* 274 N.W.2d 123, 126 (Minn. 1979). The agreement specifies that the Skydiving Club shall not be "held responsible or liable for any negligence implied or otherwise." In fact, appellant himself had no difficulty describing the scope of the waiver at his deposition. The trial court did not err when it found no ambiguity in the agreement.

■ We must then consider whether the trial court correctly applied the law in awarding summary judgment to the Skydiving Club. Minnesota recognizes the validity of exculpatory agreements in certain circumstances, although they are not favored.[1]

In *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920 (Minn.1982), the supreme court set forth the standard applicable to exculpatory clauses and found an exculpatory clause in a health spa membership contract valid. The *Schlobohm* court first directed that if a clause exonerating a party from liability is either ambiguous in scope or purports to release a party from liability for intentional, willful or wanton acts, it is not enforceable. *Id.* at 923.

Having already noted that the agreement is not ambiguous, we further agree with the trial court that the agreement is limited to releasing the Skydiving Club from liability for acts of negligence. While we recognize that some of the language in the agreement could be construed to extend beyond acts of negligence, the clause considered in *Schlobohm* also included broad language. There, the supreme court determined that "[t]he clause specifically purports to exonerate Spa Petite from liability

1. See Tanick, *Exculpation Clauses: Loopholes to Legal Liability,* Bench & B. Minn. 14 (Aug.1986) for a discussion of exculpation law in Minnesota.

for acts of negligence and negligence only." *Id.* at 923. The agreement here is susceptible to that same interpretation. Further, as in *Schlobohm,* Malecha alleged only that the Skydiving Club had been negligent. He did not allege any damage from intentional or willful acts of the Skydiving Club.

In *Schlobohm,* after considering whether the clause was ambiguous or overbroad, the supreme court addressed whether the clause violated public policy. 326 N.W.2d at 923. The court adopted a two-prong test to analyze the policy considerations: (1) whether there was a disparity of bargaining power between the parties, and (2) whether the service being offered is a public or essential service. *Id.*

As did the court in *Schlobohm,* we find no disparity of bargaining power between Malecha and the Skydiving Club. There is no evidence that the Skydiving Club's services were necessary or unavailable elsewhere. Further, Malecha was under no compulsion to make the parachute jump. He had the choice to either make the jump subject to the Skydiving Club's rules or to forego it. *See Schlobohm,* 326 N.W.2d at 925.

Malecha asserts that he was not given the waiver form to sign until just before leaving the club area for his jump. At that point, he claims he was forced to accept the exculpatory agreement on a "take it or leave it" basis. Proof that he had no opportunity to negotiate the terms of the exculpatory agreement is not enough to show a disparity of bargaining power. Malecha also had to show that the Skydiving Club's services could not be obtained elsewhere. *See Schlobohm,* 326 N.W.2d at 924–25. There is evidence in the record indicating that there are other skydiving training businesses in the vicinity of the Skydiving Club. In fact, Alan Eisentrager checked into at least one other skydiving business before he and Malecha decided to go to the Skydiving Club. *Cf. Walton v. Fujita Tourist Enterprises Co., Ltd.,* 380 N.W.2d 198, 201 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Mar. 21, 1986) (ex-culpatory clause in a familiarization trip agreement held invalid because the offer of the trip was "by invitation only" and the agreement was unilaterally prepared by the offeror; the services were not available elsewhere; and fam trips are necessary for the business success of a travel agent).

We also conclude that the Skydiving Club's service is not a public or essential service. The *Schlobohm* court described this second part of the public policy test as follows:

> In examining whether the type of service being offered is a public or essential service, the courts consider whether it is the type generally thought suitable for public regulation. Types of services thought to be subject to public regulation have included common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers and services involving extra-hazardous activities. * * * Courts from other jurisdictions generally have held contracts relating to recreational activities do not fall within any of the categories where the public interest is involved. * * *
>
> Further, * * * the courts consider whether the party seeking exoneration offered services of great importance to the public, which were a practical necessity for some members of the public.

*Id.* at 925–26 (citations and footnotes omitted). The supreme court concluded that the services furnished by a gymnasium or health spa are not the type generally thought suitable for public regulation and do not involve an activity of great public importance or of practical necessity. *Id.* at 925–26.

In response to questions raised by the court at oral argument, Malecha cites to federal regulations of parachute jumping to support his argument that the exculpatory agreement is void as against public policy. *See* 14 C.F.R. §§ 105.1–105.43 (1986). Section 105.43 covers equipment and packing requirements. These regulations focus primarily, not upon the safety of the jumper, but on mitigating "hazard[s] to air traffic or to persons or property on the sur-

face." 14 C.F.R. § 105.13. *See also Freeman v. United States*, 509 F.2d 626, 630–31 (6th Cir.1975).

We conclude that the presence of these regulations does not render void the exculpatory agreement signed by Malecha. It appears that Malecha raises the issue of regulation of parachute jumping in order to bring that activity within the ambit of "public" or "essential" services described in *Schlobohm.* However, the Skydiving Club's services are not qualitatively the same kind as those provided by common carriers, hospitals, doctors or public utilities, which are "generally thought suitable for regulation." *See Schlobohm*, 326 N.W.2d at 925. Significantly, the *Schlobohm* court includes a case involving parachute jumping in its list of cases from other jurisdictions that hold contracts relating to recreational activities do not fall within any of the categories where the public interest is involved. *Id.* at 925–26 (citing *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981)). Further, parachute jumping is not an activity of great importance to the public and it is not a practical necessity to anyone. *See Hulsey v. Elsinore Parachute Center*, 168 Cal.App.3d 333, 342–43, 214 Cal.Rptr. 194, 199 (1985); *Jones*, 623 P.2d at 377. Also, exculpatory agreements relating to parachute jumping were upheld in *Poskozim v. Monnacep*, 131 Ill.App.3d 446, 86 Ill.Dec. 663, 475 N.E.2d 1042 (1985), and *Cain v. Cleveland Parachute Training Center*, 9 Ohio App.3d 27, 457 N.E.2d 1185 (1983).

The result in this case is not changed by the fact that Malecha may not have read the exculpatory agreement. "In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different." *Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982).

■ Malecha's attorney stated at oral argument that Malecha did not contemplate that the Skydiving Club's alleged failure to properly pack his parachute was within the scope of the intended exculpatory agree-

ment. This argument had not been raised previously. Nonetheless, we shall address it. The exculpatory agreement's broad definition of the Skydiving Club's potential negligence leads us to conclude that the kind of accident which occurred here was encompassed by the agreement. This unfortunate accident is not like the extraordinary accident that occurred in *Larsen v. Vic Tanny International*, 130 Ill.App.3d 574, 85 Ill.Dec. 769, 474 N.E.2d 729 (1984). In *Larsen*, the plaintiff sustained injuries as a result of inhaling gaseous vapors at a health club facility. Larsen's injury bore no relationship to his use of the Club facilities. Therefore, the accident gave rise to an issue of fact as to whether the defendant's conduct and the danger to which Larsen was subjected were within the scope of the intended exculpatory agreement. *See id.* at 577, 85 Ill.Dec. at 772, 474 N.E.2d at 732. *Cf. Schlessman v. Henson*, 83 Ill.2d 82, 46 Ill.Dec. 139, 413 N.E.2d 1252 (1980) (the parties contemplated that the exculpatory agreement covered the broad range of accidents which occur in auto racing). In the present case, the parachute is an integral part of the very act of skydiving. There would be no rational basis upon which to exclude from the scope of the exculpatory agreement negligence resulting in a malfunction of the parachute.

■ We finally note that, regardless of when the agreement was given to Malecha to sign, it is supported by adequate consideration. Surrender of a legal right or forbearance constitutes valid consideration. 1 A. Corbin, Corbin on Contracts § 139 (1963). Malecha paid a course fee and waived his right to sue the Skydiving Club for its negligence in exchange for the training course and the opportunity to sky jump. We do not consider that the exculpatory agreement was a separate transaction requiring additional consideration.

We are aware that the results of upholding exculpatory clauses are sometimes harsh. In some instances public policy interests dictate that such clauses be held invalid. However, under the particular circumstances here present, and consistent

with *Schlobohm,* we must conclude that the trial court acted properly in declaring the exculpatory agreement valid and in granting summary judgment to the Skydiving Club.

## DECISION

The trial court properly awarded summary judgment to respondent based upon the exculpatory agreement.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. Like the dissent in *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920 at 927 (Minn.1982), I would call this contract between the parties a contract of adhesion and thus unenforceable.

It was a pre-printed contract given to appellant to sign on a "take it or leave it" basis. No evidence in the record indicates that the various clauses, including the exculpatory clause, were offered to appellant on a negotiable basis. He did not have a chance to offer to pay more money for instructions if the exculpatory clause would be removed. It would be foolish to ever expect that to be the case. Common sense and business experience tells us different.

When pre-printed forms such as those used in *Schlobohm* and this case are offered by companies, they have been drafted and typed up in final form to be used as is, with the only blank spaces being for date and signature. This fact situation does not represent arm's-length bargaining. It begs the question to state that if appellant did not want to sign away his right to sue for negligence, he need not have purchased the services respondent offered. The issue still remains. If there is no public policy to be served, and the contract has the indicia of a contract of adhesion, why should purveyors of services have the benefit of exculpatory clauses?

The majority opinion discusses the likelihood that there were other skydiving clubs in the general area, and thus appellant had parity of bargaining power because he could take his business elsewhere. Although the record is not clear as to whether there were other businesses and, if so, how close, and whether they offered exactly the same services for the same price, I think the issue is a red herring. Even if there were one or two businesses in the same area, all each would have to do is use the same type of exculpatory clause and there would be no chance for anyone wishing to negotiate to shop around. If this exculpatory clause is countenanced for one skydiving club, it will be used by all.

Another issue raised by the majority is whether or not skydiving is subject to public regulation or, at least, is of the type of service which is normally subject to public regulation. I do not see that as the controlling issue. There is some public regulation of skydiving to the extent that parachuting, by definition, involves the use of planes, and the federal government has pre-empted the field in certain areas and maintains concurrent jurisdiction in other areas over all light aircraft and airports.

The real issue is, why do courts go out of their way to support exculpatory contracts. It is conceded that they are not favored in the law and must be strictly construed against the party wishing their benefit. *See Schlobohm,* 326 N.W.2d at 923. Much of the precedent on exculpatory clauses comes from considering construction contract indemnity clauses and those in commercial leases. Indemnity clauses are different. They do not necessarily leave an injured party without recourse. What they generally do is allow two or more entities a legitimate avenue to negotiate to shift the burden if there is a lawsuit. They are not generally used to deny an injured party the right to sue at all. However, pure exculpatory clauses do just that. They leave injured parties without any recourse.

In the few areas of the law where a plaintiff's right to sue has been abrogated, some type of compensation system has been substituted as a matter of public policy. Workers compensation insurance and no-fault benefits (when the plaintiff cannot reach the tort threshold) are clear examples of the carefulness in which an injured par-

ties' right to recover something is protected when a plaintiff's common-law right to sue a tortfeasor is limited.

Allowing a trial on the merits in this lawsuit does not prejudice respondent. Respondent would still have available the two standard defenses that are available to all entities when sued. The first of the two is the claim that there is no negligence or causation, and the second is the claim that if there is negligence, the plaintiff's own negligence is greater than the defendant's.

I see no public policy to be maintained by not labeling the contract in question for what it is, a contract of adhesion. I would have reversed the grant of summary judgment and remanded for trial on the merits.